50 CCPA

### Application of Maurice MAY.
### Patent Appeal No. 6879.

United States Court of Customs
and Patent Appeals.
Jan. 16, 1963.

———◆———

Andrew B. Beveridge, Washington, D. C. (Mead, Browne, Schuyler & Beveridge, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the rejection of claim 15 of application Serial No. 629,415, filed December 19, 1956, entitled "Snap-In Glass Setting Construction." Claims 9, 11 and 12 have been allowed.

The claim reads:

"15. A snap-in glass setting assembly for supporting a sheet of glass on edge upon an elongated support, said assembly being readily assembled or disassembled and comprising a pair of opposed elongated substantially channel-shaped stop members each including a lower flange, an upper flange, and a substantially vertical web member connecting said lower and upper flanges, each lower flange being located upon said support and having a beveled upper surface sloping upwardly from the projecting end of said lower flange to a longitudinally extending groove located adjacent the substantially vertical web member associated with said lower flange, each upper flange terminating in a longitudinally extending sealing strip engaging a side surface of a glass sheet supported by said elongated support, and a plurality of spaced apart spring clips connected to said elongated support and disposed lengthwise of said stop members, each spring clip including a base portion located between the opposed projecting ends of said lower flanges, and a pair of spring arms each extending outwardly from said base portion and overlying one of said lower flanges, each arm being longer than the flange which it overlies and terminating in a downwardly and then upwardly extending lip portion having a substantially V-shaped configuration, and each lip portion being seated in and bearing against the associated groove to maintain the associated stop member in position on said elongated support."

As is apparent from the claim, the invention relates to an assembly for holding a glass sheet on edge as, for example, in a store front. The assembly is dry, in the sense that no cement or putty is used, and may be readily assembled and disassembled by snapping or unsnapping stop members into or out of a series of spring clips holding the stop members to an elongated support.

The structure involved comprises a pair of channel-shaped members, the upper flange of which terminates in a seal-

ing strip engaging a side of the glass sheet and the lower flange of which engages the spring clips which are mounted on the elongated support.

The references of record relied on are:

Hallauer 2,620,905 December 9, 1952.
Wille et al. 2,871,524 February 3, 1959.

The board concluded that the claim was not patentable over Hallauer in view of Wille et al.

The Hallauer reference shows a snap-in glass setting assembly for supporting a glass panel comprising a pair of channel-shaped members the lower flanges of which are engaged by a series of spring clips. The spring clips are grooved to maintain the channel-shaped members in position. One of the problems sought to be solved by the Hallauer invention is the difficulty in employing one assembly for window panes of varying thickness. In the prior art, the parts had to fit exactly, and a sheet of glass of different thickness required an entirely separate assembly. This problem was solved by employing a series of grooves in the spring clip so that the distance between the two channel-shaped stop members could be adjusted.

The Wille et al. patent shows a snap-in glass setting assembly comprising a channel-shaped stop member the upper flange of which terminates in a resilient glazing compound abutting against the glass pane. The lower flange of the stop member is located on a support member and has a beveled upper surface sloping upwardly from the projecting end of the flange to a longitudinally extending groove. The Wille et al. patent also shows spaced apart spring clips which grasp the lower flange of the stop member at the groove.

Appellant argues that the Hallauer patent is directed to a permanent cement filled glazing assembly, and the patent "belittles" the dry type of assemblies which do not use cement. For this reason, appellant contends, "Hallauer points away from, not toward, a dry-set snap-in double cover strip glazing construction as disclosed and claimed by Appellant." It is argued that the cement would prevent the ready disassembly called for in the claims.

The Board of Appeals found that it would be obvious to employ a resilient sealing strip for the cement of Hallauer, in spite of the preference expressed in the patent. They said:

"In discussing the drawbacks of the dry-set or non-cement glazing in the prior art, Hallauer teaches, in effect, that if one did not mind the alleged drawbacks he could use the disclosed assembly with a dry seal known in the art at the time appellant made his asserted invention, as for example, seal 60 of Wille et al. It is our opinion that the substitution of Wille's type seal for the cement of Hallauer in Figure 1 would be obvious to persons of ordinary skill in the art from the disclosures of these references, merely involving an obvious selection between known alternatives in the art and the application of routine technical skills."

We find no error in the reasoning of the board. In referring to the non-cement constructions, Hallauer was considering the problem of varying the thickness of the pane of glass. Appellant apparently has not considered this problem. If no cement is used, the sealing strips and stop members must be of relatively exact tolerances. If a thinner pane of glass is used, it will not be securely held, unless there is some means of adjusting the stop members and/or spring clips. Hallauer provided an adjustable spring clip and in addition used cement. Obviously, very slight differences in the thickness of the glass may be adjusted to by merely using more or less cement. If a thinner pane is used, a greater amount of cement is filled into the cavity to take up any slack.

The mere fact that appellant fails to concern himself with the problem of Hallauer relating to differences in thickness in the glass does not render the instant assembly unobvious. It appears that no

variation in thickness of the glass is permitted in appellant's assembly. If the thickness of the glass will never vary, then the drawbacks of the non-cement assemblies belittled by Hallauer no longer exist. If adjustability need not be considered, then we agree with the board that it would be obvious to substitute the Wille et al. sealing means for that of Hallauer. While there is no "positive teaching" in Hallauer to substitute a resilient sealing strip, as argued by appellant, we find that the substitution would have been obvious to a person having ordinary skill in the art, particularly in view of the Wille et al. disclosure.

In making such a substitution, the assembly would be as readily disassembled as appellant's, for all that appears in the claim. While "a special tool" might make removal easier in the appellant's assembly as disclosed in the specification, there is nothing in the claim which would indicate any different structure giving rise to a difference in ability to disassemble. The statement in the claim of "said assembly being readily assembled or disassembled" is merely a statement of the desired result. Moreover, it is noted that in "the usual construction" the stop member may be "easily slipped or 'snapped' into or out of position," according to appellant's specification.

The appellant further contends that even if the substitution is made, numerous modifications would still have to be made in order to obtain the structure defined in the claim. Specifically, appellant points out that: (1) a groove would have to be made in the lower flange of each stop member adjacent the web of the channel, (2) the slope of the upper surface of the lower flange from the groove to the toe of the flange would have to be changed, and (3) the shape and length of the double spring arms would need to be changed.

Considering these differences, the board said:

"Turning now to the formation of the upper surface of the lower flanges and the length and shape of the spring arms, we agree with the Examiner that whether the groove is formed in the lower flange and the V-projection received therein in the spring arm, as in appellant's device, or the reverse is true, as in Hallauer, is but a mere matter of reversal of parts and one of choice. As we have noted above, the grooves in the spring arms of Hallauer inherently serve as stops for the inward movement of the stop members, and in reversing their position, it would seem that the logical thing to do is to provide a groove under the terminal V-projection of the spring arm and provide an abrupt shoulder so as to maintain said stopping function. Making the inner end of the lower flange beveled to facilitate passage thereof under the spring arm is an elementary expedient, as exemplified by Wille et al. Thus, we see nothing patentable in either claim on appeal over Hallauer in view of Wille et al."

We find no reversible error in the board's analysis. The Wille et al. patent teaches the same slope to the lower flange and the same groove adjacent the substantially vertical web member in the same relationship as recited in the claim. While these features are not shown in Hallauer, the function of the corresponding parts in Hallauer is the same. We cannot say that it would be unobvious to substitute one known arrangement for another having the same function. Wille et al. shows the spring clip engaging the groove. It would not be unobvious to vary the shape and length of the spring clips in Hallauer to correspond to the configuration of the lower flange which is intended to be secured. We see no distinction of any patentable significance in the shape and length of the spring clips.

In view of the foregoing, the decision of the Board of Appeals is affirmed.

Affirmed.